[No. A081771. First Dist., Div. Four. Sept. 28, 1998.]

KAISER FOUNDATION HOSPITALS et al., Petitioners, v.
THE SUPERIOR COURT OF SAN MATEO COUNTY, Respondent;
NANCY SMEE et al., Real Parties in Interest.

## COUNSEL

Curiale, Dellaverson, Hirschfield, Kelly & Kraemer, JoAnne Dellaverson, John F. Baum and Gary S. Dulberg for Petitioners.

No appearance for Respondent.

Philip Edward Kay for Real Parties in Interest.

## OPINION

**McGUINESS, J.**—In this sex discrimination and sexual harassment action, petitioners Kaiser Foundation Hospitals, Kaiser Foundation Health Plan, Inc., and the Permanente Medical Group, Inc. (hereafter referred to collectively as Kaiser) have petitioned for issuance of a peremptory writ of mandate directing the respondent trial court to vacate its order granting a motion to compel production of documents assertedly protected by the attorney-client privilege. The important issue before us is the extent to which an employer may assert the protection of the attorney-client privilege and the attorney work product doctrine as to documents contained in its investigation files, where the employer pleads the adequacy of its prelitigation investigation into the claimed misconduct as a defense in the action. The trial court ruled that the employer could be compelled to produce documents otherwise protected by the attorney-client privilege and the attorney work product doctrine, despite the fact the employer had already produced most of the documents in its investigation files pursuant to a written stipulation between the parties that such production did not constitute a waiver of these privileges as to any communications between the employer and its attorneys during the course of the investigation.

We conclude the trial court erred in so ruling. We therefore hold that, if an employer has produced the substance of relevant in-house investigations

performed by nonattorney personnel and seeks only to protect specific communications between those personnel and the employer's attorneys, the protections afforded by the law for communications between attorneys and their clients are not waived by the employer's pleading of the adequacy of its prelitigation investigation as a defense to an action for employee discrimination or harassment. We therefore instruct the trial court to vacate its order requiring production of the documents as to which Kaiser claims the protection of the attorney-client privilege or work product doctrine, and to review Kaiser's log of all documents claimed to be privileged or subject to the attorney work product doctrine in order to determine whether each withheld document is or is not privileged.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Before the filing of this action, it came to the attention of the physician-in-chief at Kaiser's Redwood City hospital that one of its doctors, a Dr. F., may have engaged in inappropriate sexual conduct. Kaiser directed its human resources consultant, Mr. Henry Diaz, to conduct an investigation into the allegations against Dr. F. Diaz interviewed more than 10 witnesses, made notes of his interviews, and produced an investigation report. Diaz periodically consulted with members of Kaiser's legal department to obtain advice about the process and progress of the investigation. Although Diaz intended to keep these communications confidential, at times he kept his notes of these conversations together with other notes and documents pertaining to the investigation.

Real parties in interest Nancy Smee, Cheri Van Hoover and Kimberly Dickerson (hereafter plaintiffs) filed their complaint against Kaiser seeking general, special and punitive damages as a result of sex discrimination and harassment by Kaiser employees. The complaint alleged that plaintiffs had been subjected to numerous humiliating and degrading incidents of sexual and retaliatory discrimination harassment by Dr. F. After the case was transferred from Alameda County to San Mateo County Superior Court, Kaiser filed an answer denying the allegations of the complaint and pleading five affirmative defenses, including failure to state a cause of action and failure to state facts sufficient to state a claim for punitive damages. Plaintiffs then served a request for production of documents on Kaiser. Among other things, request No. 9 of this document production request demanded production of "[t]he complete investigation files (including the file folders or jackets) for any and all complaints of sex discrimination or harassment involving Dr. [F]."

In its response to the document production request, Kaiser objected to request No. 9 on several grounds, including that of the attorney-client

privilege and the attorney work product doctrine. Notwithstanding these objections, Kaiser stated it would be "willing to produce the following documents provided there is a written stipulation between counsel that such production does not constitute a waiver of the attorney-client privilege and the work product doctrine as to other communications involving counsel: [¶] 1) the investigation report by Henry Diaz; [¶] 2) the investigation notes and documents of Henry Diaz that do not refer or relate to communication with counsel; [¶] 3) the investigation report by Lee Temby; [¶] 4) the report by Lloyd Cunningham; [¶] 5) the investigation documents of Gene Peach; and [¶] 6) the investigation notes and documents of Dr. Gary Hillman that do not refer or relate to communication with counsel."

Subsequent to this proffer, the parties entered into a written stipulation agreeing that Kaiser would produce the seven categories of specified documents enumerated in its response, with the express understanding that its production of these investigative reports, notes and other documents "does not waive the work-product doctrine or the attorney-client privilege as to any other communication with counsel relevant to this litigation, including but not limited to written and/or oral communication with counsel during the course of the investigation by Dr. Hillman, Mr. Diaz, Mr. Temby, Mr. Peach or Mr. Cunningham. [Kaiser] continue[s] to assert the work-product doctrine and the attorney-client privilege as to the documents referring or relating to other communication with counsel and [Kaiser] will not produce such documents." The stipulation was incorporated in a court order entitled "Stipulated Protective Order Regarding Defendants' Production of Privileged Documents." Kaiser thereafter produced over 350 pages of documents from its investigation files, together with a detailed "Log of Privileged Documents" (the privilege log) identifying 38 pages of documents that were either withheld or partially redacted due to the attorney-client privilege, the attorney work product doctrine, and the California right to privacy (Cal. Const., art. I, § 1).

Upon receipt of Kaiser's investigation files pursuant to the stipulated order, plaintiffs' counsel sent a "meet and confer" letter to Kaiser's counsel demanding production of all documents listed in Kaiser's privilege log as to which it had claimed the protection of the attorney-client privilege or the attorney work product doctrine. Citing language in the recent case of *Wellpoint Health Networks, Inc.* v. *Superior Court* (1997) 59 Cal.App.4th 110 [68 Cal.Rptr.2d 844] (*Wellpoint*), plaintiffs' attorney asserted that as long as Kaiser was placing at issue the scope and adequacy of its investigation and remedial action regarding plaintiffs' claims, Kaiser could not selectively produce documents relating to its investigation and remedial action while

withholding other relevant documents on grounds of the attorney-client privilege and the attorney work product doctrine.[1]

Following Kaiser's refusal to produce the documents which it claimed were protected by the attorney work product doctrine and the attorney-client privilege, plaintiffs filed a motion to compel. Relying on the decision in *Wellpoint*, plaintiffs argued that Kaiser had either waived the protection of the attorney-client privilege and the work product doctrine, or alternatively had failed to make the requisite showing that the subject documents were in fact protected by the attorney-client privilege or the attorney work product doctrine; and they requested that the trial court review the documents in camera to determine whether either the privilege or the doctrine applies. Kaiser opposed the motion to compel, arguing that *Wellpoint* was factually distinguishable and did not require the production of documents protected by the attorney-client privilege and the attorney work product doctrine. Kaiser specifically opposed plaintiffs' request that the court examine the subject documents in camera to determine whether the privilege exists.

Following a hearing, the trial court granted plaintiffs' motion to compel production of the subject documents, and ordered that the documents be provided to plaintiffs within 10 days. The trial court's order did not explain its reasoning in deciding to grant plaintiffs' motion.[2] Kaiser immediately filed its petition for peremptory writ of mandate, asking this court for an immediate stay and a writ of mandate directing the respondent court to set aside and vacate its order granting the motion to compel production of documents. We issued an alternative writ, granted the request for an immediate stay pending our decision on the peremptory writ, and requested that plaintiffs serve and file opposition to the writ petition.

## II. DISCUSSION

The issue before this court is whether an employer which conducts an internal investigation into claimed employee misconduct, and which later

---

[1]The demand letter of plaintiffs' attorney stated: "Clearly, defendant [Kaiser] has placed its investigation and remedial action regarding plaintiffs' complaints at issue in the case. As previously stated, defendant has selectively produced documents regarding its investigation and remedial action of plaintiffs' complaints against Dr. [F.], which it considered to be subject to the attorney-client or attorney-work product privileges. *Wellpoint* is clear . . . that defendant cannot produce selective portion[s] of the investigation and remedial action documents to defend against plaintiffs' claims, while withholding other relevant documents. Having waived the privileges as to some of the relevant documents, it must provide all said documents. Please reconsider your position. Should the documents not [be] produced, plaintiff[s] will move to compel production."

[2]In its remarks to counsel, respondent superior court interpreted *Wellpoint* as not reserving to the employer the right to maintain the attorney-client privilege once the employer had raised the defense that its investigation was adequate.

produces its nonprivileged investigation files in the course of litigation against it, waives the protection of the attorney-client privilege or the attorney work product doctrine as to confidential communications between the employer's nonattorney investigator and the employer's attorney during the investigation. We must address this issue in light of the recent decision in *Wellpoint*, which addresses the question in the similar yet factually distinguishable context of an employer's internal prelitigation investigation conducted entirely *by an attorney* hired by the employer. (*Wellpoint, supra,* 59 Cal.App.4th at pp. 114-119.) We conclude that, contrary to the interpretation for which plaintiffs argue and which the trial court accepted, *Wellpoint* does *not* hold that, once a defendant claims it has investigated a complaint of harassment and taken appropriate remedial action based on its own investigation, a plaintiff is entitled to discover *all* communications involving the employer's internal investigation, whether or not the investigation was conducted by a nonattorney and regardless of the employer's invocation of the attorney-client privilege with respect to the nonattorney's confidential communications with the employer's counsel.

In *Wellpoint*, a prelitigation investigation into an employee's discrimination claims was conducted by an attorney hired by the employer for that specific purpose. After the employee initiated a lawsuit against the employer alleging causes of action for racial discrimination in employment, the employee served a subpoena on the employer's attorney demanding production of all documents pertaining to the attorney's prelitigation investigation. The employer and its attorney refused production, citing the attorney-client privilege and the work product doctrine. Thereafter, the trial court issued a blanket ruling that the attorney-client privilege and the attorney work product doctrine did not apply, and requiring production of all the documents demanded. (*Wellpoint, supra,* 59 Cal.App.4th 114-119.)

The Court of Appeal issued a peremptory writ of mandate directing the trial court to vacate its order requiring the employer to produce all documents pertaining to the attorney's prelitigation investigation, and to enter an order requiring the employer to prepare a privilege log pursuant to Code of Civil Procedure section 2031, subdivision (f)(3).[3] The appellate court held that resolution of the question whether the employer had waived the protections of the attorney-client privilege and the work product doctrine was dependent on the claims asserted in the complaint and the defenses thereto.

---

[3]Code of Civil Procedure section 2031 pertains to discovery requests for production and inspection of documents and other tangible evidence. In pertinent part, Code of Civil Procedure section 2031, subdivision (f), provides: "The party to whom an inspection demand has been directed shall respond separately to each item or category of item by a statement that the party will comply with the particular demand for inspection and any related activities, a

Because the trial court had sustained a demurrer to the employee's second amended complaint and there was no complaint or answer on file, the issue of waiver could not be determined at that point. Nevertheless the court opined that, once the employee did file an acceptable complaint, any defense by the employer based on the reasonableness of its attorney's investigation would place the adequacy of the investigation itself at issue, and the employer would then *not* be able to claim the attorney-client privilege or work product doctrine to protect the otherwise privileged communications generated by that investigation. (*Wellpoint, supra,* 59 Cal.App.4th at pp. 121-129.)

Plaintiffs contend that nothing in the *Wellpoint* opinion suggests the court was limiting its reasoning to situations in which an attorney conducted the investigation, and that the same interests are implicated when an investigation is conducted by a nonlawyer. They argue for the broadest possible reading of the *Wellpoint* decision, to the effect that whenever a defendant employer claims that it has conducted an adequate investigation of the claims of an employee and taken appropriate remedial measures based on its investigation, it waives the attorney-client privilege and the work product doctrine with respect to the entirety of its investigation file, including *all* items contained therein whether or not they involve communications between the investigator and an attorney. In so arguing, plaintiffs rely on the following passage from *Wellpoint*: "If a defendant employer hopes to prevail by showing that it investigated an employee's complaint and took action appropriate to the findings of the investigation, then it will have put the adequacy of the investigation directly at issue, and cannot stand on the attorney-client privilege or work product doctrine to preclude a thorough examination of its adequacy. The defendant cannot have it both ways. If it chooses this course, it does so with the understanding that the attorney-client privilege and the work product doctrine are thereby waived." (*Wellpoint, supra,* 59 Cal.App.4th at p. 128.)

representation that the party lacks the ability to comply with the demand for inspection of a particular item or category of item, or an objection to the particular demand.

". . . . . . . . . . . . . . . . . . . . . . .

"(3) If only part of an item or category of item in an inspection demand is objectionable, the response shall contain a statement of compliance, or a representation of inability to comply with respect to the remainder of that item or category. If the responding party objects to the demand for inspection of an item or category of item, the response shall (A) identify with particularity any document . . . falling within any category of item in the demand to which an objection is being made, and (B) set forth clearly the extent of, and the specific ground for, the objection. If an objection is based on a claim of privilege, the particular privilege invoked shall be stated. If an objection is based on a claim that the information sought is protected [attorney] work product under Section 2018, that claim shall be expressly asserted."

Kaiser argues that this language is quoted out of context, and that *Wellpoint* is distinguishable from the instant case on its facts. Kaiser's point is well taken. In *Wellpoint*, the employer responded to the employee's original claims by undertaking an investigation. However, rather than carrying out the investigation itself through in-house personnel, the employer hired a law firm to perform the investigation on its behalf. An attorney from the law firm then sent the employee a letter rejecting his claims of racial discrimination, and stating that " 'each charge . . .' " made by the employee had " '. . . been fully investigated and taken seriously.' " (*Wellpoint, supra,* 59 Cal.App.4th at p. 117.) After the employee filed suit and sought discovery of the investigation files, the employer claimed the entire investigation was protected by the attorney-client privilege and the work product doctrine because the investigator happened also to be legal counsel. (*Id.* at pp. 117-118.) On these facts, the *Wellpoint* court concluded that should the employer raise the defense of adequate investigation, it could not then hide behind the privilege to keep the entire investigation secret. (*Id.* at pp. 125-129.)

The facts of the instant case are significantly different. Here, Kaiser's investigation was performed by a nonattorney human resources specialist. When plaintiffs requested discovery of Kaiser's investigation files, Kaiser produced over 90 percent of its investigation-related documents after obtaining a *written stipulation* that such production did *not* constitute a waiver of the attorney-client privilege, and withheld or partially redacted only 38 pages of documents (just under 10 percent of the whole) under the attorney-client privilege or the work product doctrine. Kaiser also produced a privilege log describing the nature of each document withheld or redacted on grounds of the attorney-client privilege or attorney work product doctrine. Thus, unlike the situation in *Wellpoint*, Kaiser has never denied the plaintiffs any discovery of its investigation files on the claim its entire investigation is protected under the attorney-client privilege or work product doctrine. To the contrary, it has already produced all nonprivileged documents and communications related to its investigation of plaintiffs' claims. Kaiser's only assertions of privilege relate to specified communications between its employees and legal counsel.

A close examination of the decision in *Wellpoint* supports Kaiser's interpretation. In discussing the employee's initial contention that the attorney-client privilege and work product doctrine are inapplicable to a factfinding investigation by legal counsel, the *Wellpoint* court specifically rejected "a blanket rule excluding attorney investigations of employer discrimination from attorney-client and work product protection . . . ." (*Wellpoint, supra,*

59 Cal.App.4th at p. 122, discussing *Montebello Rose Co.* v. *Agricultural Labor Relations Bd.* (1981) 119 Cal.App.3d 1 [173 Cal.Rptr. 856] and *Watt Industries, Inc.* v. *Superior Court* (1981) 115 Cal.App.3d 802 [171 Cal.Rptr. 503].) The court went on explicitly to allow for particularized "analyses of individual documents containing attorney-client communications or purported work product to determine whether the dominant purpose behind each was or was not the furtherance of the attorney-client relationship," recognizing that "even though an attorney is hired to conduct business affairs, he or she may be called on to give legal advice during the course of the representation, and documents related to those communications should be protected notwithstanding the original purpose of employing the attorney." (*Wellpoint, supra,* 59 Cal.App.4th at p. 122.) On this basis, the *Wellpoint* court concluded the trial court in that case "should not have given [the employee] carte blanche access to [the employer's] investigative file, *but should have based its ruling on the subject matter of each document.*" (*Ibid.,* italics added.)

Subsequently, in discussing the employee's alternative contention that the employer had waived any existing attorney-client or work product protections by raising the adequacy of its investigation as a defense to his claims, the *Wellpoint* court expressly stated the position it was adopting as follows: "[T]he employer's injection into the lawsuit of an issue concerning the adequacy of the investigation *where the investigation was undertaken by an attorney or law firm* must result in waiver of the attorney-client privilege and work product doctrine. . . . As our Supreme Court has held, waiver is established by a showing that 'the client has put the otherwise privileged communication *directly at issue* and that disclosure is *essential* for a fair adjudication of the action. [Citation.]' (*Southern Cal. Gas Co.* v. *Public Utilities Com.* [(1990)] 50 Cal.3d [31,] 40 [265 Cal.Rptr. 801, 784 P.2d 1373], citing *Mitchell* v. *Superior Court* [(1984)] 37 Cal.3d [591,] 609 [208 Cal.Rptr. 886, 691 P.2d 642]." (*Wellpoint, supra,* 59 Cal.App.4th at p. 128, italics added.) Thus, the *Wellpoint* court was careful to specify that its concern was with the circumstances before it, in which the investigation performed by the employer's *attorney* was the *only* investigation cited as a defense to the employee's charges, and at the same time was claimed to be completely privileged in its entirety. Under these specific circumstances, the employer had clearly put "directly at issue" otherwise privileged communications whose disclosure was "essential for a fair adjudication of the action."

In short, *Wellpoint* did not make a blanket holding that the attorney-client privilege and the work product doctrine are waived in every case that an employer puts the adequacy of its prelitigation investigation at issue. We therefore agree with Kaiser that plaintiffs' reading of the holding in *Wellpoint* is overbroad. Adoption of plaintiffs' position would result in the

destruction of the attorney-client privilege and the work product doctrine in every case of alleged employee discrimination or harassment in which an employer puts the adequacy of its prelitigation investigation at issue. Where a defendant has produced its files and disclosed the substance of its internal investigation conducted by nonlawyer employees, and only seeks to protect specified discrete communications which those employees had with their attorneys, disclosure of such privileged communications is simply not essential for a thorough examination of the adequacy of the investigation or a fair adjudication of the action. (*Mitchell* v. *Superior Court* (1984) 37 Cal.3d 591, 609 [208 Cal.Rptr. 886, 691 P.2d 642]; *Wellpoint, supra,* 59 Cal.App.4th at p. 128.) Here, Kaiser performed a prelitigation in-house investigation through a nonlawyer human resources specialist and then produced its entire investigation file in discovery, only claiming attorney-client or work product protection of certain specified documents consisting of attorney-client communications. Under the circumstances presented in this case, we therefore conclude that neither the attorney-client privilege nor the work product doctrine has been waived unless it is established through other discovery that a significant part of any particular communication has already been disclosed to third parties. (Evid. Code, § 912, subd. (a).)[4]

We recognize, of course, that a defendant's assertion of the attorney-client privilege and the work product doctrine is in direct conflict with a plaintiff's right to discovery and production of documents. We also appreciate that certain aspects of Kaiser's investigation in this case may not come to light because of the claim of attorney-client privilege and the work product protection. However, this situation is no different than other instances in which relevant information may be shielded from discovery based on the assertion of a privilege. Inherent in the recognition of both the attorney-client privilege and the work product doctrine is the policy of encouraging

---

[4]Evidence Code section 912 provides in pertinent part: "(a) Except as otherwise provided in this section, the right of any person to claim a privilege provided by [Evidence Code] Section 954 (lawyer-client privilege) . . . is waived with respect to a communication protected by such privilege if any holder of the privilege, without coercion, has disclosed a significant part of the communication or has consented to such disclosure made by anyone. Consent to disclosure is manifested by any statement or other conduct of the holder of the privilege indicating consent to the disclosure, including failure to claim the privilege in any proceeding in which the holder has the legal standing and opportunity to claim the privilege.

"(b) Where two or more persons are joint holders of a privilege provided by Section 954 (lawyer-client privilege) . . . , a waiver of the right of a particular joint holder of the privilege to claim the privilege does not affect the right of another joint holder to claim the privilege. . . .

"(c) A disclosure that is itself privileged is not a waiver of any privilege.

"(d) A disclosure in confidence of a communication that is protected by a privilege provided by Section 954 (lawyer-client privilege) . . . , when such disclosure is reasonably necessary for the accomplishment of the purpose for which the lawyer . . . was consulted, is not a waiver of the privilege."

candor in the attorney-client relationship. That important policy would be defeated if all privileged communications regarding employment investigations were ordered disclosed in every case where the adequacy of an employer's internal investigation is placed in issue, regardless of whether or not the investigation itself was performed by an attorney.

■  The law attempts to find a balance between these competing interests in discovery and the assertion of privilege by requiring a party objecting to document production to "identify with particularity" any document as to which it makes an objection, and "set forth clearly the extent of, and the specific ground for, the objection," in accordance with Code of Civil Procedure section 2031, subdivision (f)(3). Here, Kaiser has already produced a privilege log specifying the documents as to which it has withheld production on a claim of attorney-client privilege or work product doctrine protection. The trial court must review Kaiser's privilege log to determine whether the specified documents as to which Kaiser claims the protection of either the privilege or the work product doctrine are in fact so protected. For this purpose, the information in Kaiser's log must be sufficiently specific to permit the trial court to determine whether each withheld document is or is not privileged. Should the trial court find the information in the privilege log insufficiently specific to allow such a determination, it may order Kaiser to prepare a new privilege log containing more particularized information about the nature of each document as to which the attorney-client privilege is claimed.[5] As to specific documents for which the protection of the work product doctrine is claimed, in camera inspection is the proper procedure to evaluate whether the work product doctrine applies, and if so, whether its protection should be absolute or qualified. (*Wellpoint, supra,* 59 Cal.App.4th at pp. 120-122; *Fellows* v. *Superior Court* (1980) 108 Cal.App.3d 55, 68-70 [166 Cal.Rptr. 274].)

■  In conclusion, we hold that where a nonattorney has conducted an in-house investigation of employee complaints and the employee has been afforded full discovery of all aspects of that investigation with the exception of specified communications and documents protected by the attorney-client privilege and the work product doctrine, then no waiver of either the attorney-client privilege or the work product doctrine has been made unless a substantial part of any particular communication has already been disclosed to third parties. (Evid. Code, § 912, subd. (a).) Under the circumstances of this case, therefore, Kaiser is entitled to withhold production of documents as to which it claims the attorney-client privilege or work product

---

[5]We intimate no opinion on this question whether Kaiser's privilege log is sufficiently specific for such a determination. That is the province of the trial court.

doctrine applies, on condition the trial court determines it is in full compliance with the dictates of Code of Civil Procedure section 2031, subdivision (f)(3).

### III.   DISPOSITION

The alternative writ is discharged and the stay is dissolved. Let a peremptory writ of mandate issue directing the superior court (1) to set aside and vacate its order of February 17, 1998, granting plaintiffs' motion to compel production of documents, to the extent it requires Kaiser to produce all documents as to which the protection of either the attorney-client privilege or work product doctrine has been made, and (2) to enter an order denying the motion. The trial court shall review the privilege log already prepared by Kaiser to determine whether the documents pertaining to the investigation as to which Kaiser claims the protection of the attorney-client privilege or the work product doctrine are in fact privileged. Should the trial court find the information in the privilege log insufficiently specific to allow a determination of whether each withheld document is or is not privileged, the trial court may order Kaiser to prepare another privilege log containing more particularized information about the nature of each document as to which the attorney-client privilege is claimed. As to documents for which the protection of the work product doctrine is claimed, the trial court may order in camera inspection to evaluate whether such documents are protected under the work product doctrine and, if so, whether such protection is absolute or qualified. Should the trial court determine that any documents are not in fact privileged or protected by the work product doctrine, the motion to compel may be renewed.

Kaiser shall recover its costs on this writ proceeding.

Hanlon, P. J., and Poché, J., concurred.